# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 10, 2012 Session

## JEFFERY D. ALLEN v. STATE OF TENNESSEE

**Appeal from the Circuit Court of Crockett County**
**No. 3704     Clayburn Peeples, Judge**

---

**No. W2011-01666-CCA-R3-PC  - Filed September 13, 2012**

---

Jeffery[1] D. Allen ("the Petitioner") filed for post-conviction relief, challenging his convictions for first degree felony murder, criminally negligent homicide, facilitation of attempted first degree murder, and attempted especially aggravated robbery.  As his bases for relief, he alleged several grounds of ineffective assistance of counsel at trial.  After an evidentiary hearing, the post-conviction court denied relief, and this appeal followed.  On appeal, the Petitioner asserts that trial counsel (1) failed to call two witnesses to testify at trial, (2) failed to adequately cross-examine a witness, and (3) failed to move to sever the Petitioner's offenses prior to trial.  Upon a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Brandon L. Newman and James B. Webb, Trenton, Tennessee, for the appellant, Jeffery D. Allen.

Robert E. Cooper, Jr., Attorney General & Reporter; J. Ross Dyer, Senior Counsel; Garry Brown, District Attorney General; Larry Hardister and Hillary Lawler Parham, Assistant District Attorneys General; for the appellee, State of Tennessee.

---

[1] We recognize that the Court, on direct appeal, spelled the Petitioner's name "Jeffrey," based on the spelling written in the indictment.  See State v. Jeffrey D. Allen, No. W2008-01348-CCA-R3-CD, 2009 WL 2502000 (Tenn. Crim. App. Aug. 17, 2009), perm. app. denied, (Tenn. Feb. 22, 2010).  However, all documents provided in the post-conviction proceeding have spelled the Petitioner's name "Jeffery," including his signature on his petition for post-conviction relief.  Therefore, we will utilize the spelling used in the post-conviction proceedings.

# OPINION

## Factual and Procedural Background

A Crockett County jury returned guilty verdicts against the Petitioner for first degree felony murder, criminally negligent homicide, facilitation of attempted first degree murder, and attempted especially aggravated robbery. This Court stated the facts underlying the convictions as follows on direct appeal:

[O]n January 22, 2003, the [Petitioner] and three others, Chad Bricco, Eugene Spivey, and Quantel[2] Taylor went to the Crockett County home of fifty-six-year-old Leonard Neely and his fifty-five-year-old brother, Lewis,[3] with the intent to rob and kill them. The victims were known to sell liquor from their home and rumored to keep large amounts of cash on hand. The [Petitioner] and Spivey, who were armed with a .40 caliber pistol, gained entry to the home under the pretense of wanting to buy some liquor, while Taylor and Bricco waited outside with a shotgun. Once inside, either the [Petitioner] or Spivey began firing the pistol, shooting Leonard multiple times and Lewis twice before fleeing the scene with their companions in the defendant's girlfriend's vehicle. Later that night, Leonard Neely was found dead as a result of his wounds inside the residence. Lewis survived the shooting but was unable to provide any assistance to investigators due in large part to a series of strokes and seizures that predated the shooting, which made it difficult for him to communicate.

The [Petitioner], who was almost immediately developed as a "person of interest" based on information supplied by the victims' neighbors, was initially interviewed by police on March 23, 2003. In that interview, the defendant denied any involvement in the crimes and claimed that he had been babysitting his girlfriend's children in Ripley on the night of the incident. Approximately two years later, investigators received a tip that the murder weapon belonged to Ripley Police Officer Debbie Kirkpatrick, who was Chad Bricco's mother. When ballistics testing confirmed the information, Bricco gave a statement admitting his involvement in the crimes and implicating the [Petitioner], Spivey, and Taylor.

---

[2] It is unclear from the record whether the correct spelling is "Quantel" or "Quentell."

[3] We note that the victim's name is spelled "Louis" throughout the trial transcript.

On March 18, 2005, the [Petitioner] was booked into the Crockett County Jail on a probation violation warrant. One to two days later, Bricco, Spivey, and Taylor were each charged by warrant with first degree murder, attempted first degree murder, and especially aggravated robbery. The [Petitioner] then gave a second statement in which he continued to deny any involvement in the crimes. In the second statement, however, the [Petitioner] added the new information that on the night of the murder, Spivey and Bricco had borrowed the [Petitioner's] girlfriend's vehicle for approximately forty minutes. He also said that the next day they offered to sell him a .40 caliber pistol. The [Petitioner] explained that his bloody fingerprints might have gotten on the weapon because he had touched it while his hand was bleeding from a recent cut.

On April 5, 2005, the Crockett County Grand Jury returned an indictment against the [Petitioner] in connection with the instant case, charging him with one count of first degree premeditated murder, one count of felony murder, one count of attempted first degree murder, and one count of especially aggravated robbery. On May 11, 2005, while still in jail and before a lawyer had been appointed to represent him, the [Petitioner] initiated a third statement in which he admitted that he went to the victims' residence with the intent to rob them. He denied, however, that he had planned to kill the victims and claimed that Spivey, not he, was the shooter.

. . . .

The [Petitioner] was tried alone before a Crockett County jury from April 2-4, 2008. In addition to his statement of admission, the State presented evidence to show, among other things: that the [Petitioner]'s three companions had given statements implicating the [Petitioner] in the crimes; that the [Petitioner] had told his girlfriend of his plan to rob the victims; that the [Petitioner] and his companions had borrowed the girlfriend's car on the day of the robbery and that the [Petitioner]'s blood was found in the girlfriend's car.

State v. Jeffrey D. Allen, No. W2008-01348-CCA-R3-CD, 2009 WL 2502000, at *1-2, 5 (Tenn. Crim. App. Aug. 17, 2009), perm. app. denied, (Tenn. Feb. 22, 2010) (footnotes in original). The trial court sentenced the Petitioner to a life sentence for his conviction of first degree felony murder. The court also sentenced the Petitioner to concurrent sentences of twenty years for facilitation of attempted first degree murder, twenty years for attempted

especially aggravated robbery, and four years for criminally negligent homicide,[4] all of which the court ordered to be served consecutively to his life sentence. The Petitioner appealed, and this Court affirmed the convictions but remanded for entry of a corrected judgment to reflect that the Petitioner received a life sentence for his felony murder conviction. Id. at *13. The Petitioner subsequently filed the instant petition for post-conviction relief, alleging ineffective assistance of trial counsel on numerous grounds.

At the post-conviction hearing, the Petitioner testified that his ineffective assistance of counsel claim was based in part on trial counsel not calling witnesses that the Petitioner had requested. Although Lewis Neely testified by videotape deposition at trial, the Petitioner believed that trial counsel did not make sufficient attempts to procure Neely to testify in person at trial.

Trial counsel testified that the defense's theory at trial was that the Petitioner "was there when the shooting occurred[] but that due to certain circumstantial reasons . . . he was not . . . guilty of a first degree murder." Trial counsel remembered wanting to call Neely in person as a witness at trial but did not do so. He understood that Neely's testimony would be that "somebody other than [the Petitioner] shot [Neely]." From trial counsel's recollection, Neely, during a lineup, identified as his shooter someone other than the Petitioner or the Petitioner's accomplices. When asked what efforts trial counsel made to secure Neely in person at trial, trial counsel stated,

> We went to great lengths. We issued – we had several hearings. I can remember distinctly having one with General Dorsey that was very contentious. We had multiple hearings in this Court in which we sought foreign subpoenas and we were successful in that. We hired a Michigan lawyer to serve those subpoenas in Michigan and ultimately we were not allowed to force Mr. Neely to Tennessee, but we were able to take his deposition in Michigan.

On cross-examination, trial counsel recalled that the video of Neely's deposition was played for the jury at trial. In this video, Neely discussed his identification in the lineup. Trial counsel also agreed that, following the video, Chief Jeff Sills testified regarding Neely's identification in the lineup. Furthermore, he acknowledged that Chief Sills investigated the person whom Neely identified but found that this individual had "an ironclad

---

[4] Although the felony murder conviction and the criminally negligent homicide conviction both relate to the same victim, the record does not indicate that these two convictions were ever merged. That issue is not before us. Moreover, it would appear at this point that the Petitioner has waived any such claim for post-conviction purposes. See Sean Earl Jones v. State, No. M2006-00664-CCA-R3-PC, 2007 WL 1174899, at *5-7 (Tenn. Crim. App. Apr. 20, 2007), perm. app. denied, (Tenn. 2007).

-4-

alibi." Regarding trial counsel's efforts to force Neely to testify, he maintained that there was not anything else he could have done as an attorney that he did not try. Despite the fact that Neely did not testify in person at trial, trial counsel believed that the jury clearly understood that Neely had identified someone other than the Petitioner in a lineup. Moreover, the Petitioner acknowledged that trial counsel had made clear to the jury that Neely had identified someone other than the Petitioner as the shooter in a lineup. Neely died prior to the post-conviction hearing.

The Petitioner also testified that one of the individuals he requested was Salisa Woodland. He believed that, had Woodland testified, she would have relayed information that the Petitioner told her about him not being the shooter. However, he acknowledged that Woodland was not present at the scene and that the sole information she would give would be whatever information the Petitioner told her. Trial counsel denied that the Petitioner asked him to call Salisa Woodland as a witness. He stated that he and the Petitioner discussed all potential witnesses prior to trial and decided together not to call anyone as a witness.[5] The Petitioner did not call Woodland to testify at the post-conviction hearing.

Trial counsel also testified that he remembered cross-examining a witness named Chad Bricco. His goal throughout the cross-examination was to focus on Bricco not being truthful, and trial counsel believed that he satisfied that goal. When asked about trial counsel's examination of Bricco, the Petitioner stated that trial counsel "did a pretty good job" in his attempt to discredit Bricco. However, the Petitioner believed that trial counsel should have delved further into the cross-examination. The State entered the transcript of Bricco's testimony as evidence at the post-conviction hearing.

In the trial transcript, Bricco testified that on the night of January 22, 2003, the Petitioner and two other individuals, Quantel Taylor and Eugene Spivey, came over to Bricco's mother's house to buy cocaine from Bricco. Although he knew Taylor and Spivey prior to that evening, it was the first time that he met the Petitioner. When Bricco brought the cocaine out to the car where the three men were sitting, the Petitioner told Bricco their plan to rob and shoot two bootleggers. Although the men had a shotgun in the vehicle, they informed Bricco that they needed a handgun. Bricco told them that he could provide them with a handgun but that he wanted part of the money acquired from the robbery. He then retrieved the handgun and joined the men as they drove to the Neely residence in Maury County. According to Bricco, the Petitioner's plan was to shoot the Neely brothers because the Petitioner knew them well enough that they would be able to identify him.

_____

[5] It is clear from trial counsel's testimony regarding his exhaustive efforts to procure Neely as a witness that his decision with the Petitioner not to call anyone as a witness excluded their attempts to procure Neely.

Upon reaching the house, Bricco and Taylor were to stay in the front of the house while the Petitioner and Spivey approached the door on a side porch. Bricco and Taylor planned to enter the house through the front shortly after the Petitioner and Spivey initiated the robbery. However, within seconds of someone answering the door, Bricco heard gunshots and felt that something had gone wrong, so he and Taylor ran back to the vehicle.

On cross-examination, Bricco acknowledged that he had been convicted of fourteen felonies, including thirteen burglary and theft charges. He also stated that he had been a cocaine dealer for approximately five or six years.

Trial counsel confronted Bricco with the statement he made to police. Bricco acknowledged that in his statement he told police that he met with Spivey and the Petitioner about an hour before the robbery. Further, he told police that it was Spivey and not the Petitioner who was telling Bricco all the plans and details of the robbery. Bricco also acknowledged that although he told police that Spivey had the shotgun, at trial he stated that Spivey did not have the shotgun.

In his statement to police, Bricco identified both the Petitioner and Spivey as the shooters. However, Bricco stated at trial that he named both of them because he did not see who actually fired the handgun. All he knew was that he gave the handgun to the Petitioner before the Petitioner approached the residence and that the Petitioner gave it back to him when the Petitioner returned to the car. Bricco stated that he knew Spivey through Spivey's brother and through selling Spivey cocaine.

Trial counsel pressed Bricco about the deal he made with the State. Before this deal was made, the offer before Bricco was to serve forty years at 100%. However, the State agreed that, if Bricco testified against the Petitioner at trial, Bricco only would serve twenty years at 100% for the charged offenses related to the present case.

Initially, Bricco denied telling anyone about the shooting. However, upon further questioning, he stated that he vaguely told a friend about the incident and acknowledged telling police that he told that friend "everything." Bricco remembered that, before he gave his statement, the police told him that they were looking to prosecute his mother for the incident because the gun belonged to her. However, he acknowledged that his mother had never been prosecuted for the incident.

At the post-conviction hearing, the Petitioner testified that he also thought trial counsel should have attempted to sever the charges against him. According to the Petitioner, the State failed to prove at trial that he committed the robbery. He stated that severing the charges would have benefitted him "[b]ecause if they wouldn't have . . . been able to find me

guilty of aggravated robbery or any kind of robbery, they couldn't have found me guilty of . . . felony murder."

After consideration of the Petitioner's claims, the post-conviction court denied relief. In its written order, the court noted trial counsel's efforts to procure Neely as a witness at trial:

> As a result of information provided over the course of various hearings, the Court concluded that Louis Neely was physically unable to travel back to Tennessee for trial. [Trial counsel] did everything he could to procure the personal attendance of Louis Neely, even to the point of requesting that a capias be issued for his arrest and that he be physically transported by the Sheriff to Crockett County, in company with attending medical personnel if necessary, to the Crockett County trial.

Therefore, the post-conviction court held that trial counsel was not deficient and that the Petitioner also failed to show how he was prejudiced from Neely not testifying in person.

Regarding trial counsel's failure to call Salisa Woodland as a witness, the post-conviction court determined that because she was not present at the scene of the shooting her testimony chiefly would consist of what the Petitioner and his accomplices told her. The court also accredited trial counsel's testimony that the Petitioner never requested that Woodland be called and found the Petitioner's credibility lacking. Furthermore, the post-conviction court found that the Petitioner failed to establish any prejudice suffered as a result of not calling Woodland as a witness.

The trial court also addressed trial counsel's examination of Bricco, stating,

> The conclusion that the jury was impressed by [trial counsel's] efforts to impeach Bricco's credibility is almost inescapable. Upon the original count of premeditated first degree murder, the jury only found the petitioner guilty of the lesser offense of criminally negligent homicide. If they had accepted Bricco's testimony[,] logic would have compelled a verdict of guilty of premeditated murder. Although the petitioner insisted that [trial counsel] should have "gone further," he did not indicate any specific item or matter which could or should have been developed and failed to show that the result of the trial would have been different if [trial counsel] had "gone further." . . . The decisions made by [trial counsel] were reasonable under the circumstances and will not be subjected to a process of "second-guessing" within the context of a post-conviction proceeding.

Finally, regarding the severance of the charges, the post-conviction court stated,

> It seems that the petitioner felt that he would have received some benefit by having the especially aggravated robbery charge tried separately from the murder and attempted murder charges. Petitioner did not explain any reason or grounds which would have supported a motion for severance. It appears to the court that evidence regarding the alleged robbery would have been admissible in any trial of only the murder and attempted murder charges. . . Conversely, evidence of the killing of Leonard Neely and the wounding of Louis Neely would have been relevant in any trial of only the especially aggravated robbery charge in order to show the injuries received by the victims and that the robbery was "especially aggravated."

Thus, the post-conviction court found that the Petitioner's complaint as to the severance of charges lacked merit, and the court denied post-conviction relief. The Petitioner timely appealed,[6] asserting that trial counsel was ineffective in 1) failing to call Woodland as a witness and failing to call Neely to testify in person, 2) failing to adequately cross-examine Bricco, and 3) failing to move to sever the Petitioner's offenses.

## Analysis

### *Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn "a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise." Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of

---

[6] The Petitioner filed a pro se notice of appeal on August 1, 2011. However, the post-conviction court issued its written order on August 18, 2011. Because the Petitioner prematurely filed his notice of appeal, we will treat his notice of appeal as having been timely filed. See Tenn. R. App. P. 4(d).

counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[7] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984) (citation omitted); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our Supreme Court has explained:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

---

[7] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

### Trial Counsel's Failure to Call Witnesses

The Petitioner's first contention is that trial counsel was deficient in not calling Neely to testify in person at trial. The trial court found that trial counsel's actions were clearly not deficient, and we agree. First, Neely did testify at trial by videotape deposition. Furthermore, trial counsel testified that he wanted to call Neely as a witness and that he did everything possible to ensure that Neely would testify in person. However, despite trial counsel's exhaustive efforts, including numerous hearings and the execution of several subpoenas, he was not permitted to force Neely's appearance at trial. Thus, we clearly do not consider trial counsel's actions in this regard to be deficient.

Moreover, the main reason the Petitioner wanted Neely to testify in person was because Neely identified someone other than the Petitioner in a photographic lineup. However, both the Petitioner and trial counsel testified that this fact was made abundantly

-10-

clear to the jury, in part by the videotape testimony of Neely himself. Therefore, the Petitioner's argument on this issue is without merit.

The Petitioner also claims that trial counsel was deficient by failing to call Woodland as a witness at trial. At the post-conviction hearing, trial counsel testified that the Petitioner never specifically requested that trial counsel call Woodland to testify. Trial counsel stated that he spent time with the Petitioner prior to trial discussing all the potential witnesses and that they agreed that trial counsel would not call anyone as a witness at trial. Although the Petitioner claimed that he specifically requested that trial counsel call Woodland as a witness, the post-conviction court accredited trial counsel's testimony and found the Petitioner's testimony lacking credibility in this regard. Thus, we defer to the post-conviction court's findings. Momon, 18 S.W.3d at 156. Furthermore, the Petitioner fails to establish this claim because he failed to call Woodland to testify at the post-conviction hearing. See Wiley v. State, 183 S.W.3d 317, 333 (Tenn. 2006) (holding that the petitioner failed to prove that counsel's performance was deficient or prejudicial in failing to interview certain individuals because the petitioner did not call those individuals to testify at the post-conviction hearing). Accordingly, we hold that trial counsel was not deficient with respect to not calling Woodland as a witness. Therefore, the Petitioner is entitled to no relief on this issue.

### Trial Counsel's Cross-Examination of Bricco

The Petitioner also claims that trial counsel was deficient in his cross-examination of Bricco. Although the Petitioner testified at the post-conviction hearing that trial counsel "did a pretty good job," he believed that trial counsel should have gone further in his cross-examination. Yet, the Petitioner fails to specify how trial counsel could have "gone further" in his cross-examination.

Regarding trial counsel's cross-examination of Bricco, the post-conviction court stated, "The conclusion that the jury was impressed by [trial counsel's] efforts to impeach Bricco's credibility is almost inescapable." Furthermore, the post-conviction court found that trial counsel adequately attacked Bricco's testimony, as evidenced by the fact that the jury convicted the Petitioner of criminally negligent homicide rather than premeditated murder. The State admitted into evidence the transcript of Bricco's trial testimony. The transcript clearly contains many effective attacks that trial counsel made on Bricco's credibility, including several instances in which trial counsel highlighted the differences between Bricco's statement to police and his trial testimony. The Petitioner has failed to specify what else trial counsel could or should have elicited from Bricco on cross-examination. Accordingly, the Petitioner has failed to establish deficient performance on the part of trial counsel.

The post-conviction court also found that, although the Petitioner claimed that trial counsel should have "gone further," the Petitioner "failed to show that the result of the trial would have been different if [trial counsel] had 'gone further.'" Thus, we also hold that the Petitioner has failed to establish that he suffered any prejudice. Therefore, he is entitled to no relief on the basis of this claim.

<u>Trial Counsel's Failure to Sever Charges</u>

Finally, the Petitioner asserts that trial counsel should have attempted to sever his charges before proceeding to trial. The Petitioner contends that the State did not produce sufficient proof regarding the robbery and, had trial counsel severed the offenses, the jury would not have had enough evidence to convict the Petitioner of first degree felony murder.

Looking first to the prejudice prong, even if trial counsel was deficient, the Petitioner must show by clear and convincing evidence that he suffered prejudice. We agree with the trial court that, even if the offenses had been severed, evidence of the robbery would have been admissible to prove the underlying felony necessary to convict the Petitioner of felony murder. <u>See</u> Tenn. Code Ann. § 39-13-202(a)(2) (Supp. 2002). In much the same way, evidence of shooting the victim and the victim's resulting death would have been admissible for the State to prove that the robbery was especially aggravated. <u>See</u> Tenn. Code Ann. § 39-13-403 (1997). Thus, even without addressing the deficiency prong, the Petitioner has failed to show by clear and convincing evidence that he suffered any prejudice. Accordingly, he is not entitled to any relief on this issue.

**Conclusion**

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court.

_____
JEFFREY S. BIVINS, JUDGE